**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Burim Gashi, | No. CV-19-02679-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Pending before the Court is Defendant City of Scottsdale, et al.'s ("Defendants") Motion to Dismiss (Doc. 14). For the following reasons, the Court grants Defendants' motion and dismisses Plaintiff Burim Gashi's ("Plaintiff") complaint with leave to amend.

## BACKGROUND

The facts as alleged in the complaint are as follows. Plaintiff was romantically involved with Enisa Duric from October 2014 to September 2017. After the end of their relationship, Plaintiff received threats from Duric that she would "make [Plaintiff] pay for breaking up with her." (Doc. 1-3 at 21.) Plaintiff claims Duric worked with Defendants to set Plaintiff up for a crime he did not commit.

On January 4, 2018, Duric texted Plaintiff a picture of a gun and said she was going to kill herself because he would not take her back. Plaintiff promptly called 911. Later that day, Plaintiff received a call from the Phoenix Police informing him that Duric denied sending the text message to Plaintiff. Duric later admitted to thinking about suicide but said she had changed her mind. Officers apparently concluded there was no improper conduct

by Plaintiff and took no further action on that occasion.

On January 30, 2018, Duric slept at Plaintiff's home. When Plaintiff left for work the next day, Duric decided to stay at the house and wait for him. Plaintiff put a camera under the table in the living room before he left. On his way to work, Plaintiff believes he saw Defendant Miller's car parked near Plaintiff's house. Later that day, Plaintiff tried to contact Duric but was unable to reach her. Plaintiff later viewed the camera footage from his house and heard a male voice after he left the house. The voice asked Duric who was home. Duric later deleted the video but told Plaintiff the voice was Defendant Miller.

On February 18, 2018, the Scottsdale Police contacted Plaintiff and told him Duric had accused him of threatening her, locking her in the bedroom, and pointing a gun at her. Defendant police officers Miller, Alamshaw, Martinez, Good, Yunck, and Campbell later arrived at Plaintiff's home. Plaintiff denied Duric's allegations and attempted to show the officers text messages from Duric proving (1) Duric wanted the bedroom locks installed and (2) Plaintiff had saved Duric from suicide on many occasions. Officers nevertheless arrested Plaintiff. Plaintiff was then taken to District Two Jail and interrogated by Defendant Martinez, who was recording the interview on his body-worn camera and his personal cell phone. Defendant Miller spoke with Duric. Defendant officers then went outside of the interview rooms and spoke to one another, sometimes with their body-worn cameras recording and other times with the cameras muted. Plaintiff was subsequently charged with aggravated assault in Maricopa Superior Court. While the charges were pending, Plaintiff served three days of jail time and wore an ankle bracelet for a period of eight months. That case was ultimately dismissed on the State's motion.

Plaintiff asserts that the evidence used against him was untruthful, including the police report, Defendant Martinez' grand jury testimony, and the body-worn camera video of Defendant Good, which Plaintiff alleges was altered "sometime in September of 2018." (Doc. 1-3 at 26.) Plaintiff asserts that Duric admitted that the assault claim was "an orchestration between herself, Michael Coleman [a neighbor with whom Plaintiff alleges Duric had a sexual relationship], and Defendant Miller." (Doc 1-3 at 26.) Plaintiff alleges

that Duric told him that the arrest was set up by Coleman and Defendants Miller, Alamshaw, Martinez, and "others." (Doc 1-3 at 26.) Plaintiff alleges Duric told him that she was told by Defendant Miller that she should purchase locks to put on the bedroom door "to make Plaintiff look controlling and abusive." (Doc 1-3 at 26.) Plaintiff alleges Duric told him that Defendants Miller, Alamshaw, and Martinez had been to her house before the arrest and were pushing Duric to call them every day. Plaintiff alleges Duric claimed Coleman and Defendant Miller beat her and threatened her to keep her from telling the truth. Plaintiff alleges he was given pictures of Duric showing significant trauma to her face, and that Duric claimed Coleman and Defendant Miller threatened her, gang raped her, and threatened to inject cocaine into her, and that they were monitoring and intimidating her. Finally, Plaintiff alleges Duric claims Defendant Bodrero threatened her that she could be charged with false reporting regarding an email she sent retracting her story.

Plaintiff filed this action on March 6, 2019 asserting claims against the City of Scottsdale and police officers Miller, Bodrero, Alamshaw, Martinez, Good, Campbell, and Yunck. Pursuant to 42 U.S.C. § 1983, Plaintiff claims Defendant officers violated his federal rights "by the false arrest, false imprisonment, abuse of process, wrongful arrest, and/or malicious prosecution of Plaintiff." (Doc. 1-3 at 29.) Also pursuant to 42 U.S.C. § 1983, Plaintiff claims the City of Scottsdale violated the First, Fourth, and Fourteenth Amendments as well as 42 U.S.C. § 1981 through "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision." (Doc. 1-3 at 31.) Under Arizona law, Plaintiff brings claims for intentional infliction of emotional distress, abuse of process, malicious prosecution, and wrongful arrest.

## DISCUSSION

### I. Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the

right of relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Moreover, even when a complaint's allegations are "consistent with [] unlawful" conduct, a court may conclude they do not plausibly suggest such conduct because they are "not only compatible with, but indeed . . . more likely explained by, lawful . . . behavior." *Iqbal*, 556 U.S. at 680.

**II.     Analysis**

    **A. Claim One: Violation of 42 U.S.C. § 1983**

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants violated his "clearly established statutory or constitutional rights" by the "false arrest, false imprisonment, abuse of process, wrongful arrest, and/or malicious prosecution of Plaintiff." (Doc. 1-3 at 28.)

### 1. False/Wrongful Arrest & False Imprisonment

Plaintiff claims "the arrest of Plaintiff was wrongful, unlawful, lacked probable cause, and deprived him of his clearly established constitutional rights to be free from unreasonable searches, seizures, and arrests." (Doc 1-3 at 30.) Plaintiff's complaint does not specifically argue the elements of false imprisonment, but simply states that Plaintiff had a right to be "free from malicious prosecution . . . which resulted in Plaintiff's unlawful prosecution and imprisonment." (Doc 1-3 at 29-30.) The Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Pareto*, 139 F.3d at 699.

Plaintiff does not contest—he even alleges—that Duric told Defendant officers that Plaintiff threatened her, locked her in the bedroom, and pointed a gun at her. Nor does he contest that, in the absence of the alleged conspiracy, Duric's statement would have given Defendant officers probable cause to arrest him. What Plaintiff does allege, however, is that Defendants were involved with Duric in fabricating allegations of domestic violence against Duric to wrongfully arrest the Plaintiff. (Doc 1-3 at 23, 26.) Plaintiff alleges that at least Defendant Miller was friends with Michael Coleman, someone with whom Duric allegedly told Plaintiff she was having a sexual relationship at the time. Plaintiff further alleges that Duric told him that, at the same time, she was also having a sexual relationship with Defendant Miller. (Doc 1-3 at 23.) Plaintiff further alleges that, according to Duric, she was admitting Defendants Miller, Alamshaw, and Martinez, into Plaintiff's home prior to the alleged incident. (Doc 1-3 at 26.)

In pursuit of the false allegations for which Plaintiff was arrested, "Ms. Duric claims she was told by Defendant Miller that she should purchase additional locks to put on the bedroom door and for her to sleep on the floor the night of the alleged assault so to make Plaintiff look controlling and abusive." (Doc 1-3 at 26.) Plaintiff further alleges that when Duric told Plaintiff of the wrongful scheme, "she was beaten by Mr. Coleman and Defendant Miller," who "threatened her, gang raped her and threatened to inject cocaine into her." (Doc 1-3 at 27.) He further alleges that "[Coleman and Officer Miller] were

monitoring her and intimidating her," (Doc 1-3 at 26), prior to the time of the dismissal of the charges against him.

Like the Supreme Court in *Twombly*, 550 U.S. 544, 566 (2007), the Court can conclude that even though Defendants' conduct in arresting and detaining Plaintiff is "consistent with" a scheme to wrongfully arrest him, "it d[oes] not plausibly suggest . . . illicit [behavior] because it was not only compatible with, but indeed was more likely explained by, lawful . . . behavior." *Iqbal*, 556 U.S. at 680. Here, Defendants' behavior, as alleged by Plaintiff, would be the likely result of Duric's report to them that the Defendant had threatened her, locked her in a bedroom and pointed a gun at her. Plaintiff's assertions that these allegations were concocted as a result of pre-existing sexual trysts between his girlfriend and police officers and their friend who was a neighbor, who then threatened, beat and raped Duric to prevent her from disclosing the false scheme once Plaintiff was arrested, are not plausible. Plaintiff has not pled sufficient facts to state a plausible claim for false arrest or false imprisonment against any defendant.

### 2. Abuse of Process

Plaintiff claims Defendants violated his federal rights by abuse of process. Yet Plaintiff has failed to allege facts showing that Defendants used the legal process to accomplish a goal other than for which it was created. Abuse of process is not simply "commencing an action or causing process to issue without justification"; even litigation motivated by ill intentions does not constitute abuse of process where "process is used only to accomplish the result for which it was created." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1060 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013). In order to prevail on an abuse of process claim, Plaintiff must prove that Defendants "took an action that could not logically be explained without reference to the defendant's improper motives." *Id.* Plaintiff "has not alleged that any specific judicial process was employed for a purpose other than for what it was designed." *Lovejoy v. Arpaio*, No. CV09-1912PHXNVW, 2010 WL 466010, at *15 (D. Ariz. Feb. 10, 2010). Thus, Plaintiff has not stated a claim for abuse of process.

### 3. Malicious Prosecution

Plaintiff claims Defendants committed malicious prosecution when they "initiated a prosecution against Plaintiff that lacked probable cause to believe the proceeding could succeed, Defendants acted with malice, the prosecution was terminated in Plaintiff's favor and there was a sufficient post-arraignment liberty restraint to implicate Plaintiff's Fourth Amendment rights as he was incarcerated for a substantial period of time." (Doc 1-3 at 30.) In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citing *Slade v. City of Phoenix*, 112 Ariz. 298, 541 P.2d 550, (1975)). Defendants argue that because they are not prosecutors, they cannot be held liable for malicious prosecution. As *Slade* clearly states, the role of officers should not be viewed so passively. *Id.* at 553 (citing *White v. Chicago, B. & Q. R. R.*, 417 F.2d 941, 943 (8th Cir. 1969) ("Where [an] informant knowingly gives false or misleading information or in any wise directs or counsels officials in such a way so as to actively persuade and induce the officer's decision, then the informant may still be held liable [for malicious prosecution].")). "[T]he presumption of prosecutorial independence does not protect investigative officers if they interfered with the prosecutor's judgment by omitting relevant information or by pressuring the prosecutor to file charges." *Lovejoy v. Arpaio*, No. CV09–1912–PHX–NVW, 2010 WL 466010, at *14 (D. Ariz. Feb. 10, 2010).

Plaintiff does not allege that Defendants pressured the prosecutor to file charges. He does allege that Defendant Martinez "falsified information in the police report when he stated that Plaintiff admitted that he chased Ms. Duric with a gun . . . . Defendant Martinez then went in front of the grand jury with this same false statement." (Doc. 1-3 at 25.) However, looking to the incident/investigation report for Plaintiff's criminal case, there is no statement to that effect. (Doc 14-2.)[1] Looking to the grand jury proceedings on February

---

[1] The incident/investigation report and transcript of the grand jury proceedings are not attached to Plaintiff's complaint; however, "[e]ven if a document is not attached to a

26, 2018, Defendant Martinez never states that Plaintiff admitted to chasing Duric with a gun.[2] Plaintiff does not make any other allegations that are sufficiently factual or plausible to sustain this claim. Defendants' motion is fully granted with respect to Claim One.

## B. Claim Two: Violation of the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1981 Pursuant to 42 U.S.C. § 1983

Plaintiff accuses the City of Scottsdale of violations of the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983. As "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," Plaintiff must allege "execution of a government's policy or custom . . . inflict[ed] the injury" in order to prevail on this claim. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). And Plaintiff "cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).

To support his claim, Plaintiff alleges that the City of Scottsdale: established policies, procedures, customs, and/or practices for the police officers that exhibited deliberate indifference to the constitutional rights of citizens; had actual or constructive knowledge of the officers' unconstitutional practices, yet failed to take any reasonable or adequate steps to remedy them; delegated authority to engage in unlawful arrests and the use of illegal and excessive force; allowed officers to respond to scenes where they had a personal interest and permitted baseless arrests; and failed to train its officers. While the Court must assume that Plaintiff's general allegations "embrace whatever specific facts

---

complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) (impliedly overruled on other grounds as discussed in *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1162 n.2 (C.D.Cal. 2002)) (the court may consider material relied upon for plaintiff's claims where authenticity is not in question).

[2] Defendant Martinez does respond affirmatively to the question, "He pointed the handgun at Ms. Duric; is that correct?" (Doc 19-1 at 78), which could be interpreted as attributing an admission to Plaintiff. Regardless, this statement could not give rise to 42 U.S.C. § 1983 liability because an officer's grand jury testimony is protected by absolute immunity. *See Rehberg v. Paulk*, 566 U.S. 356, 369–70 (2012).

might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). As Plaintiff provides no factual basis whatsoever to support these allegations, Defendants' motion is granted as to this claim.

### C. Claims Three, Four, Five, and Six

Under Arizona law, Plaintiff brings claims for intentional infliction of emotional distress, abuse of process, malicious prosecution, and wrongful arrest. However, because Plaintiff's federal claims are dismissed, the Court lacks jurisdiction to address Plaintiff's state law claims.[3]

### D. Leave to Amend the Complaint

"A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). In this case, Plaintiff could cure the defects of his claim by providing additional factual allegations that render the claims alleged in the complaint plausible. The Court will dismiss the complaint without prejudice and allow Plaintiff to file an amended complaint that properly meets the factual sufficiency and plausibility standards required under Federal Rule of Civil Procedure 12(b)(6), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### CONCLUSION

Plaintiff has not plausibly stated a claim sufficient to survive a motion to dismiss with respect to federal law Claims One (violation of 42 U.S.C. § 1983) and Two (violation of the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1981 pursuant to 42

---

[3] "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Pursuant to federal statutes, this Court has subject matter jurisdiction over a case only if the complaint alleges a federal cause of action or the amount in controversy exceeds $75,000 and the parties are citizens of different states. See 28 U.S.C. §§ 1331, 1332(a).

U.S.C. § 1983). The Court consequently lacks jurisdiction to determine state law Claims Three (IIED), Four (abuse of process), Five (malicious prosecution), and Six (unlawful arrest). The Court will dismiss the complaint and allow Plaintiff to file an amended complaint.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**. Plaintiff's Complaint (Doc. 1-3) is dismissed with leave to amend. Plaintiff shall have 30 days to file an amended complaint from the date of this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall terminate this action on **October 22, 2019**, without further notice, if Plaintiff does not file an amended complaint.

Dated this 20th day of September, 2019.

G. Murray Snow
Chief United States District Judge